

FILED
JUN 15 2010

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

AUTO-OWNERS INSURANCE COMPANY,   Civ. 10-__4067__

        Plaintiff,

-vs-

EQUITY HOMES, INC., FAIR      C O M P L A I N T
HOUSING OF THE DAKOTAS, AND
THE UNITED STATES OF AMERICA
(DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT),

        Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

    Plaintiff, Auto-Owners Insurance Company ("Auto-Owners"), as and for its Complaint against Defendants Equity Homes, Inc. ("Equity Homes"), Fair Housing of the Dakotas ("Fair Housing"), and the United States of America (Department of Housing and Urban Development) ("HUD"), states and alleges as follows:

    1.    Auto-Owners brings this action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

    2.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

3. Pursuant to 28 U.S.C. § 1391, venue is proper in the District of South Dakota because a substantial part of the events giving rise to this claim occurred in South Dakota, all Defendants are residents of and/or are doing business in the State of South Dakota, and all Defendants are subject to personal jurisdiction in this District.

4. Auto-Owners is an insurance company with its principal place of business in Lansing, Michigan. Auto-Owners is authorized to do business as an insurance company in the State of South Dakota.

5. Equity Homes is a South Dakota corporation having its principal place of business at 4208 West 38th Street, Sioux Falls, South Dakota.

6. Fair Housing is a North Dakota non-profit corporation having its principal of business at 909 Basin Avenue, Suite 2, Bismarck, North Dakota, and which is doing business in the State of South Dakota.

7. HUD is an agency of the United States of America which has a field office located at 4301 West 57th Street, Suite 101, Sioux Falls, South Dakota.

8. Equity Homes is a defendant in litigation commenced by HUD and in which Fair Housing has intervened. The litigation is entitled *United States of America, Plaintiff, and Fair Housing of the Dakotas, Plaintiff-Intervenor v. Equity*

*Homes, Inc., et al., Defendants*, and is pending in the United States District Court for the District of South Dakota, Court File Number 09-4059 (the "HUD Litigation").

9. In the HUD Litigation it is alleged that Equity Homes was the builder and/or building contractor for various multi-family dwellings located in or near Sioux Falls, South Dakota, including East Briar Estates, West Briar Estates, Beverly Gardens Apartments, Kensington Apartments, Sertoma Hills Apartments, and Sertoma Hills Villas (the "Properties").

10. The Properties were substantially complete and certified for occupancy on various dates beginning on June 25, 1996, and continuing through May 7, 2003.

11. The HUD Litigation alleges that the design, construction, sale and/or operation of the Properties has been in violation of the Fair Housing Act, 42 U.S.C. § 3601, et. seq. ("Act").

12. The HUD Litigation further alleges that Equity Homes is liable for the alleged violations of the Act and, on that basis, HUD and Fair Housing seek compensatory and punitive damages; injunctive relief, requiring Equity Homes to take affirmative action including the "retrofit" of the Properties so that they are in compliance with the accessibility provisions of the Act; fines and penalties; and an award of attorney fees, costs, and other unspecified relief.

13. During the pendency of the HUD Litigation, claims have been made upon Equity Homes to disclose other properties in South Dakota for which it has been the builder and/or building contractor and HUD and Fair Housing have alleged that the relief requested in the HUD Litigation includes damages attributable to those other properties, including the cost to "retrofit" such other properties.

14. Auto-Owners issued Tailored Protection Policies to Equity Homes which were in effect on the following dates and under the following policy numbers:

| Effective Dates | Policy Number |
| --- | --- |
| October 1, 1998 – October 1, 1999 | 984610-08550171-98 |
| October 1, 1999 – October 1, 2000 | 984610-08550171-99 |
| November 30, 2000 – November 30, 2001 | 984610-08521801-00 |
| November 30, 2001 – November 30, 2002 | 984610-08521801-01 |
| November 30, 2002 – November 30, 2003 | 984610-08521801-02 |
| November 30, 2003 – November 30, 2004 | 984610-08521801-03 |
| November 30, 2004 – November 30, 2005 | 984610-77521801-04 |
| November 30, 2005 – November 30, 2006 | 984610-77521801-05 |
| November 30, 2006 – November 30, 2007 | 984610-77521801-06 |
| November 30, 2007 – November 30, 2008 | 984610-77001862-07 |
| November 30, 2008 – November 30, 2009 | 984610-77001862-08 |
| November 30, 2009 – November 30, 2010 | 984610-77001862-09 |

(hereinafter referred to as the "Auto-Owners Policies").

15. The Auto-Owners Policies provide coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage'" or "because of 'personal injury' or 'advertising injury.'"

16. The term "bodily injury" is defined in the Auto-Owners Policies as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

17. The term "property damage" is defined in the Auto-Owners Policies as "physical injury to tangible property, including all resulting loss of use of that property" together with the "loss of use of tangible property that is not physically injured."

18. The term "personal injury" is defined in the Auto-Owners Policies as "injury, other than 'bodily injury' arising out of one or more of the following offenses:

    a.    False arrest, detention or imprisonment;

    b.    Malicious prosecution;

    c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.    Oral or written publication . . . of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

    e.    Oral or written publication . . . of material that violates a person's right of privacy; [or]

  f. [D]iscrimination or humiliation."

  19. In the Auto-Owners Policies issued before November 30, 2006, the term "advertising injury" is defined as "injury arising out of one or more of the following offenses:

  a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  b. Oral or written publication of material that violates a person's right of privacy;

  c. misappropriation of advertising ideas or style of doing business; or

  d. Infringement of copyright, title or slogan."

  20. In the Auto-Owners Policies issued on or after November 30, 2006, the term "advertising injury" is defined as "injury arising out of one or more of the following offenses:

  a. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services in your 'advertisement';

  b. Oral or written publication, in any manner, of material that violates a person's right of privacy in your 'advertisement';

  c. The use of another's advertising ideas in your 'advertisement'; or

  d. Infringing upon another's copyright, 'trade dress' or slogan in your 'advertisement.'"

  21. To be covered under the Auto-Owners Policies, any "bodily injury" or "property damage" must be caused by an "occurrence" and must occur during the policy period.

22. The term "occurrence" is defined in the Auto-Owners Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

23. Under the terms of the Auto-Owners Policies, the loss of use of property that has been physically injured "shall be deemed to occur at the time of the physical injury that caused it."

24. Under the terms of the Auto-Owners Policies, the loss of use of tangible property that has not been physically injured "shall be deemed to occur at the time of the 'occurrence' that caused it."

25. Under the Auto-Owners Policies issued on or after November 30, 2006, there is no coverage unless, prior to the policy period, "no insured . . . knew that the 'bodily injury' or 'property damage' had occurred, in whole or in part" and, if the insured had such knowledge, the "continuation, change, or resumption of such 'bodily injury' or 'property damage' during or after the policy period will be deemed to have been known prior to the policy period."

26. To be covered under the Auto-Owners Policies, any "personal injury" must be caused by an offense arising out of the insured's business which must be committed during the policy period.

27. To be covered under the Auto-Owners Policies issued before November 30, 2006, any "advertising injury" must be caused by an offense committed in the course of advertising the insured's goods, products, or services committed during the policy period.

28. To be covered under the Auto-Owners Policies issued on or after November 30, 2006, any "advertising injury" must be caused by an offense arising out of the insured's business committed during the policy period.

29. The Auto-Owners Policies exclude "'property damage' expected or intended from the standpoint of the insured."

30. The Auto-Owners Policies exclude "property damage" to "property you own."

31. The Auto-Owners Policies exclude "property damage" to "that particular part of real property" on which the insured or its subcontractors are "performing operations, if the 'property damage' arises out of those operations."

32. The Auto-Owners Policies exclude "property damage" to "that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."

33. The term "your work" is defined in the Auto-Owners Policies as "work or operations performed by you or on your behalf" together with "materials, parts or equipment furnished in connection with such work or operations."

34. The Auto-Owners Policies exclude "'property damage' to 'your work' arising out of it or any part of it and included in the 'Products-Completed Operations Hazard.'"

35. The term "Products-Completed Operations Hazard" is defined in the Auto-Owners Policies to include "'property damage' occurring away from premises you own or rent" arising out of "your work" except "work that has not yet been completed or abandoned."

36. The Auto-Owners Policies exclude "property damage" to "impaired property" or to "property that has not been physically injured, arising out of . . . [a] defect, deficiency, inadequacy or dangerous condition" in "your work."

37. The term "impaired property" is defined in the Auto-Owners Policies, in pertinent part, as tangible property other than "your work" that cannot be used or is less useful because it incorporates "your work" that is "known or thought to be defective, deficient, inadequate or dangerous" if such property can be restored to use by the "repair, replacement, adjustment or removal" of "your work.:

38. The Auto-Owners Policies exclude damages "claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, removal or disposal of . . . 'your work' . . . if such . . . work . . . is withdrawn or recalled from the market or from use by any person or

organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it."

39.  With regard to the Auto-Owners Policies issued on or after November 30, 2006, such policies exclude "'personal injury; . . . caused by or at the direction of the insured with knowledge that the act would violate the rights of another and would inflict 'personal injury.'"

40.  Equity Homes has tendered the HUD Litigation to Auto-Owners seeking defense and indemnity against the claims being asserted therein.

41.  Auto-Owners has agreed to defend Equity Homes in the HUD Litigation under a full reservation of rights.

42.  The claims at issue in the HUD Litigation do not constitute claims for damages because of "bodily injury" or "advertising injury" as those terms are defined in the Auto-Owners Policies.

43.  All or some of the claims at issue in the HUD Litigation do not constitute claims for damages because of "property damage" or "personal injury" as those terms are defined in the Auto-Owners Policies.

44.  As to those claims against Equity Homes in the HUD Litigation that qualify as "property damage," such "property damage" was not caused by an "occurrence."

45. As to those claims against Equity Homes in the HUD Litigation that qualify as "property damage," all or some of that "property damage" did not occur during the effective dates of some or all of the Auto-Owners Policies.

46. As to those claims against Equity Homes in the HUD Litigation that qualify as "property damage," prior to some or all of the policy periods for the Auto-Owners Policies, Equity Homes knew that all or some of that "property damage" had occurred, in whole or in part.

47. As to those claims against Equity Homes in the HUD Litigation that arise out of "personal injury" offenses, all or some of those "personal injury: offenses first occurred before the first effective date of the Auto-Owners Policies.

48. The claims seeking equitable relief in the HUD Litigation do not constitute claims for "damages."

49. The claims seeking fines, penalties, punitive, or exemplary damages in the HUD Litigation do not constitute claims for "damages because of" "property damage" or "personal injury" and it would violate the public policy of South Dakota to allow Equity Homes to obtain indemnification for such damages.

50. As to those claims against Equity Homes in the HUD Litigation that qualify as "property damage," all or some of that "property damage" was expected or intended by Equity Homes.

51. As to those claims against Equity Homes in the HUD Litigation that qualify as "property damage," all or some of that "property damage" constitutes "property damage" to "property you own."

52. As to those claims against Equity Homes in the HUD Litigation that qualify as "property damage," all or some of that "property damage" constitutes "property damage" to "that particular part of real property" on which Equity Homes or its subcontractors were "performing operations" and that "property damage" arose out of those operations.

53. As to those claims against Equity Homes in the HUD Litigation that qualify as "property damage," all or some of that "property damage" constitutes "property damage" to "that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."

54. As to those claims against Equity Homes in the HUD Litigation that qualify as "property damage," all or some of that "property damage" constitutes "property damage" to "'your work' arising out of it or any part of it and included in the 'Products—Completed Operations Hazard.'"

55. As to those claims against Equity Homes in the HUD Litigation that qualify as "property damage," all or some of that "property damage" constitutes "property damage" to "impaired

property" or to "property that has not been physically injured" arising out of a "defect, deficiency, inadequacy or dangerous condition" in "your work."

56. As to those claims against Equity Homes in the HUD Litigation that qualify as "property damage," all or some of that "property damage" constitutes damages claimed for "loss, cost or expense" incurred for the "loss of use, withdrawal, recall, removal or disposal of 'your work'" and such work was withdrawn or recalled from use because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

57. The Auto-Owners Policies do not provide coverage for all or some of the claims against Equity Homes in the HUD Litigation.

58. Auto-Owners has no duty to defend or indemnify Equity Homes against the HUD Litigation or all or some of the claims at issue therein.

WHEREFORE, Auto-Owners demands judgment as follows:

1. Declaring that there is no coverage under any of the policies issued by Auto-Owners to Equity Homes for all or some of the claims at issue in the HUD Litigation;

2. Declaring that Auto-Owners has no duty to defend or indemnify Equity Homes against the HUD Litigation for some or all of the claims at issue therein; and

3. For such further declarations and for such further and additional relief as the Court deems just and equitable.

**THE PLAINTIFF DEMANDS TRIAL BY JURY.**

Dated this 14th day of June, 2010.

RICHARDSON, WYLY, WISE, SAUCK
& HIEB, LLP

By _____
Attorneys for Plaintiff

One Court Street
Post Office Box 1030
Aberdeen, SD  57402-1030
Telephone No. 605-225-6310